UNITED STATES DISTRICT COURT

DISTRICT OF NEVADA

\* \* \*

| | |
|---|---|
| SFR INVESTMENTS POOL 1, LLC, | Case No. 2:22-cv-00521-JCM-EJY |
| Plaintiff, | ORDER |
| v. | |
| CARRINGTON MORTGAGE SERVICES, LLC, | |
| Defendants. | |

Presently before the court is SFR Investment Pool 1, LLC's ("SFR") motions for a temporary restraining order (ECF No. 5) and injunctive relief (ECF No. 6), to which Carrington Mortgage Services, LLC ("Carrington") filed responses (ECF No. 10).

**I.  Background**

This matter arises from an impending foreclosure sale of real property located at 3900 Wharton Street, Las Vegas, NV 89130 (the "property"), set for March 29, 2022, at 9:00 AM. (ECF No. 5 at 1). On September 7, 2012, SFR purchased the property at a homeowners' association foreclosure sale for $9,900.00. (ECF No. 5-1 at 43). Three years later, Carrington obtained the property's underlying deed of trust through an assignment. (*Id.* at 47).

On November 2, 2021, Carrington recorded a notice of breach and default as well as an election to cause sale of the property under the deed of trust because no payments had been made on the deed of trust since 2009. (*See id.* at 50). Ten days later, SFR requested statements and information from Carrington regarding the foreclosure sale. (*Id.* at 60–61). On February 23, 2022, without fulfilling SFR's request, Carrington recorded a notice of trustee's sale against the property scheduling the foreclosure sale. (*Id.* at 74–76).

Ten days after Carrington recorded the notice of sale, SFR brought this suit in Nevada state court asserting claims for violation of NRS 107.200 *et seq.* and quiet title. (ECF No. 1-1). Carrington then removed this matter to this court. (ECF No. 1).

SFR now seeks a temporary restraining order and preliminary injunction enjoining Carrington, its successors, assigns, and agents from selling the property and continuing foreclosure proceedings during the pendency of this case. (ECF Nos. 5, 6).

**II.     Legal Standard**

Under Federal Rule of Civil Procedure 65, a court may issue a temporary restraining order ("TRO") when the movant alleges "specific facts in an affidavit" that immediate and irreparable harm will occur before the adverse party can be heard in opposition. FED. R. CIV. P. 65(b)(1)(A). TROs and preliminary injunctions are extraordinary remedies meant to "preserve the status quo" and "prevent irreparable loss of rights prior to judgment." *Estes v. Gaston*, No. 2:12-cv-1853-JCM-VCF, 2012 WL 5839490, at *2 (D. Nev. Nov. 16, 2012); *see also Sierra On-Line, Inc. v. Phoenix Software, Inc.*, 739 F.2d 1415, 1422 (9th Cir. 1984). The standard for granting a TRO is "substantially identical" to the standard for granting a preliminary injunction. *Stuhlbarg Int'l Sales Co. v. John D. Brush & Co.*, 240 F.3d 832, 839 n.7 (9th Cir. 2001).

The court considers the following elements in determining whether to grant preliminary injunctive relief: (1) a likelihood of success on the merits; (2) a likelihood of irreparable injury if preliminary relief is not granted; (3) balance of hardships; and (4) advancement of the public interest. *Winter v. N.R.D.C.*, 555 U.S. 7, 20 (2008); *Stanley v. Univ. of S. California*, 13 F.3d 1313, 1319 (9th Cir. 1994).

The movant must satisfy all four elements; however, "a stronger showing of one element may offset a weaker showing of another." *Alliance for the Wild Rockies v. Cottrell*, 632 F.3d 1127, 1131 (9th Cir. 2011). This "sliding scale" approach dictates that when the balance of hardships weighs heavily in the movant's favor, he only needs to demonstrate "serious questions going to the merits." *Id.* at 1135.

### III.   Discussion

Having considered the *Winter* factors, the court DENIES SFR's motions for a temporary restraining order (ECF No. 5) and preliminary injunction (ECF No. 6); primarily because the balance of hardships is not clearly in SFR's favor.

SFR argues that the balance of hardships is in its favor because it has taken all steps necessary to obtain the statement regarding the debt secured by the deed of trust and it has no way of knowing how much it needs to pay to satisfy the debt secured by the deed of trust. (*See* ECF No. 5). Thus, SFR argues that without injunctive relief, it may lose its interest in the property despite having complied with all of its legal obligations.[1] This argument is unavailing considering the extensive litigation concerning this property over the past decade.

As SFR is aware, in 2020, on another matter concerning the property, the Supreme Court of Nevada affirmed the Nevada state district court's 2018 judgment which held that SFR purchased the property subject to the underlying deed of trust. *See SFR Invs. Pool 1, LLC v. Carrington Mortg. Servs., LLC*, 472 P.3d 187 (Nev. 2020). Yet, despite the Nevada district court's holding over four years ago that the deed of trust is valid, and the Supreme Court of Nevada's affirming that decision two years ago, SFR has yet to make payments pursuant to the deed of trust.

Though SFR now claims that Carrington is keeping it in the dark as to how much it owes on the deed of trust, it did know that it purchased the property subject to the deed of trust and still failed to attempt to make payments until now, the time that it could ostensibly assert an argument that the deed was extinguished because more than ten years has passed since the underlying loan was allegedly accelerated. (*See generally* ECF No. 5). This does not show that the balance of hardships tips in favor of SFR.[2]

---

[1] SFR further argues that the "lack of authority to foreclose, coupled with the termination of the deed of trust" tips this factor in its favor. However, these arguments better address the likelihood of success on the merits, not balance of hardships. *See supra* note 3.

[2] Further, while Carrington's alleged failure to deliver statements and information to SFR calls into question Carrington's compliance with NRS 107.200 *et seq.*, NRS 107.300 provides a remedy for such a violation that does not require the extraordinary remedy of injunctive relief.

At bottom, SFR stands to lose revenue from an investment that it has refused to pay for despite Nevada state courts' holding that it is obligated to do so. Meanwhile, if the court grants injunctive relief, Carrington risks suffering further losses on the debt obligation that it is owed under the deed of trust. These hardships are very similar; thus, the balance of hardships does not tip sharply in favor of SFR.

Therefore, even assuming that SFR demonstrates "serious questions going to the merits,"[3] and irreparable harm,[4] SFR is not entitled to injunctive relief under the traditional or sliding scale approach.[5]  *See Cottrell*, 632 F.3d at 1131.

**IV.     Conclusion**

Accordingly,

IT IS HEREBY ORDERED, ADJUDGED, and DECREED that SFR's motions for a temporary restraining order (ECF No. 5) and injunctive relief (ECF No. 6) be, and the same hereby are, DENIED.

DATED THIS  28th day of March, 2022.

JAMES C. MAHAN
UNITED STATES DISTRICT JUDGE

---

[3] Which, having considered the merits of SFR's claims, the court does not hold that it has. While SFR claims that no "clear and unequivocal affirmative act[s] necessary to decelerate the loan" occurred after the first notice of default in 2010, it ignores the recission of election to declare default that was recorded against the property in in 2011. (ECF No. 5-1 at 28–29, 37). The Supreme Court of Nevada and Ninth Circuit have recently held that such a notice of recission renders Nevada's ancient lien statute inapplicable. *See Glass v. Select Portfolio Servicing, Inc.*, No. 78325, 2020 WL 3604042, at *1 (Nev. July 1, 2020) (unpublished) (en banc rehearing denied); *SFR Invests. Pool 1, LLC v. U.S. Bank N.A.*, No. 81293, 2021 WL 4238769 (Sept. 16, 2021) (unpublished) (reaffirming *Glass's* holding on the point of rescission); *TRP Fund VIII, LLC v. NewRez LLC*, 2021 WL 5823701 (9th Cir. 2021) ("Recent decisions of the Nevada Supreme Court confirm our conclusion that the recission notice decelerated the loan and prevented extinguishment of the deed of trust under the ancient lien statute."). Further, SFR's argument that Carrignton's authority to foreclose is "call[ed] into question" because "upon information and belief" the deed of trust and promissory note were never reunited does not show a likelihood of success on the merits, but merely poses the possibility that SFR could succeed.

[4] Real property generally does constitute irreparable harm.

[5] Even assuming it satisfied the other factors, SFR's public policy arguments are also unavailing. That a third party could purchase the property without knowing that SFR will veraciously defend its interest does not mean that the public interest favors allowing SFR to keep that interest despite having never made a payment under the deed of trust.